Case number 16-7083 at L. Belize Bank Limited v. Government of Belize Appellant. Mr. Basobaro for the appellant. Mr. Kimmelman for the affilee. Mr. Basobaro, welcome back. Yeah. Nice to see you, Your Honor. Thank you, Your Honor, and glad to be here. Juan Basombrio for the Government of Belize. I want to try to touch base on three points, highlight three issues. One has to do with the ethics issues. Number two, whether the New York Convention is applicable to Belize. And third, just quickly, FNC. Going to the first point, we believe that district court has to be reversed because confirmation should have been denied based on arbitrator Douglas' failure to disclose and based on his apparent bias. Now, there are two articles in the New York Convention that we have invoked, and I want to clarify a point first. One of the articles is 5-1-D. That deals with the creation of the arbitration panel. That issue is governed by international law. The second article that we invoke is 5-2-B, and that's the public policy exception. That issue is governed by U.S. law. So in applying the two articles, you apply two separate sets of laws. That's where the district court makes its fundamental error because it decides the first issue, the international law issue, Article 5-1-D, and then when it gets to the public policy exception, it basically incorporates its discussion on international law and the British rule. It never applies U.S. law, and that's a fundamental error of law that has to be reversed. So let me touch on that first. Can I ask about D? D is the composition of the arbitral authority was not in accordance with the agreement of the parties or not in accordance with the law of the country where the arbitration took place? Not in accordance with. Either standard can be used where the arbitrator had conflict of interest. Yes, but I'm talking about the difference between international law and British law, for example. So the second one, the country where the arbitration took place, that would have been British law, right? Correct. So we're dealing with the first one. Did the agreement say that it was subject to international law? No, it doesn't have to. The composition, according to the Hervesta case that we cited, the composition of the panel in an international arbitration is governed by international law. And that case, that was a case from EXIT. EXIT is an international institution like the LCIA, and the author of that decision was the immediate past president of the LCIA, John Paulson, who's a world-renowned arbitrator and a professor at the University of Miami. Right, but I'm trying to interpret the New York Convention, and it says was not in accordance. There's two choices. Either it was not in accordance with the agreement of the parties or not in accordance with the law of the country where the arbitration took place. Correct. So you have to rely on the first. Does the agreement of the parties say anything about the composition of the arbitral panel? The agreement of the parties requires arbitration. The question is what ethics rules govern that arbitration. The ethics rules that apply would be international law under Hervesta. Yes, but that's not what the New York Convention says. The New York Convention specifically says two choices. Either agreement of the parties or, failing that, the law of the country in which arbitration occurs. So is there something in the agreement of the parties from which we can conclude that international law was the rule? Let me answer it by saying it this way. If two American entities decided to arbitrate before the AAA, their agreement would say we're going to arbitrate in New York under New York law before the AAA. But it is U.S. ethics rules that would apply. That doesn't have to be laid out in the arbitration because it's a U.S. arbitration. This is an international arbitration by virtue of which international ethics rules apply under Hervesta. And so to finish that point, under 5.1b, if you had applied Hervesta, you have to ask whether Matrix Chambers is a collaborative venture or not. Now, we presented evidence to the LCIA. It's in my letter, which is attached to the appendix volume 2 at pages 7 through 70, where I presented evidence that Matrix does not act as traditional arbitration chambers. It acts like a law firm. Their website says we are a, quote, collaborative venture. That means that the LCIA could not rely on the British rule that barristers are independent and should have conducted. Do you think that's enough for us to find that basically they were acting in violation of British laws and rules governing how barristers associate themselves? Under Article 5.1b, that's enough to reverse the district court and instruct the district court to conduct that analysis. If the district court didn't conduct the analysis, it basically rubber-stamped what the LCIA did. The district court under the New York Convention was required to conduct its own independent analysis. But let me turn now to v. 2b, the public policy exception, which I believe is even a more compelling argument. Under the public policy exception, U.S. law has to be applied, our own public policy. I provided the court with a Rule 28J letter in which I cited a decision, Enron, Nigeria, is from this court from December the 27th of 2016. That decision is dispositive and requires reversal on the public policy defense. This court held that if enforcement of the award based on the ICC's interpretation, the ICC being like the LCIA, violates a public policy of the U.S., the district court was obliged to refrain from enforcing it. And that's an issue for resolution by the district court. Here, the district court did not apply U.S. law, did not engage in any analysis. We have submitted the amicus brief of Professor Painter, a renowned ethics expert, who concludes that if you apply U.S. law to these facts, there would have been a conflict. Now, this court should not do that in the first instance, that analysis. You need to send it back to the district court and ask the district court to reconsider the public policy defense in light of U.S. law. Why can't we do it? I mean, we have your briefs and all the information in front of us. So even if we agree that the district court misapplied the law, why can't we properly apply the law? You could, and we would welcome that if you are inclined to do it in the first instance. And again, the letter that I sent to the LCIA that I cited lays it all out. Now, we showed specific evidence that Arbitrator Douglas' chambers represented Belize Bank, the opponent, Lord Ashcroft, who controls Belize Bank, and with respect to matters regarding Belize. In any arbitration in the U.S., that would have been sufficient to require at least disclosure. The LCIA relied on the British rule and said no. Now, let me just brief. Can I just back up for a second? So the requirement that we apply American law is not a requirement that we apply the ABA's model rules of conduct. It's that we apply our public policy, correct? Correct. And our public policy has to be, according to our Temorio case, it applies only when enforcement would violate the most basic notions of morality and justice, right? Correct. It's not enough just that under American law there would have had to have been a firewall, or under American law two different partners in the same firm who don't share profits would have still been required not to be permitted. It has to be the most basic notions of morality and justice, right? Correct. And then we have this Al Harvey case where the court says that unless, and in a situation where the existence of facts are only marginally disclosable, that is maybe they would be under if we're actually strictly applying American rule, but that they don't violate a sense of morality, then they don't have to be. So how do you get yourself out of, you know, Professor Painter's amicus brief is about American law, but not about American notions of morality. It's not about the bottom line question of whether even a violation of American law is so terrible that we would upset an arbitral award. Okay, let me answer it. You're correct, Your Honor. In order for the public policy to apply the defense, there has to be a violation of the basic notions of morality and justice. I would submit to this court that American ethics rules go to the issue of morality and justice. Without ethics, you cannot have morality and justice. When you say American ethics rule, you think every aspect of the model rules, if it's violated, is a violation of the underlying morality of American justice? In this case, there was a violation of the Supreme Court decision in Commonwealth, which held that if an arbitrator faces, I'm sorry, if an arbitrator refuses to disclose information that shows a bias, that constitutes grounds to deny confirmation of an award. That's a specific ethics rule announced by the United States Supreme Court. But that assumes a firm, and a firm is defined under American law firm practices, which this was not. Correct, but when you apply the public policy defense, you take our rules and you impose them on the facts. Does that mean in every international arbitration then, the barristers have to go to every member of the chambers and do an investigation and seek disclosures and provide all of that information in every international arbitration that involves a U.S. party? Because later on, if there's a possibility of that arbitral award being enforced in the U.S., we're going to have to look at that information to see whether under U.S. public policy, the arbitrator was fair? Yes, so let me give you the two reasons why. Number one, because that's what the New York Convention says. If you come to the U.S. later, U.S. ethics rules and U.S. law are going to govern that decision, whether it's enforceable. So if you choose to come here, you've got to play by our ethics rules like everyone else. Number two, also yes, because that's what international law requires after the Herr-Perska decision. Let me just ask, is there any further questions? Okay, fine, thank you. All right, Mr. Kimmelman, and welcome back to you. Thank you, Your Honor. This is a continuing saga. Glad to have the same lawyers. Yes, Your Honor, we're pleased to be here with you again. May it please the Court, Louis B. Kimmelman, Sidley Austin, on behalf of the Belize Bank, the petitioner below, and the appellee here. Let me just start and address Judge Wilkins' question first, because in Shark v. Alberto Culver in 1974, the Supreme Court said we, the United States, cannot have international commerce on our terms under our law and expect to do business in the world. It was true then. It is so much truer today. And U.S. ethics rules are not part of the New York Convention nor of the implementing legislation, and I'll come to that in a second. There are standards that we must apply under the New York Convention. This is a New York Convention award. It was confirmed by the Court below, based on the New York Convention, and as I believe I will show you, it was properly confirmed. Going first to Chief Judge Garland's question, there are essentially two issues under the New York Convention. Bear in mind this is a foreign award rendered in London under English arbitration law, brought to the United States for confirmation, so it's clearly governed by the New York Convention. And the question for the District Court was, should this award be confirmed under the terms of the New York Convention? There are only seven defenses. Only two of them really have been invoked here. One is 5.1d. And with respect to that question, that deals, as the Court mentioned, with respect to the agreement of the parties, and the agreement of the parties is very precise on this. The agreement of the parties on this issue is the arbitration clause. It provides for arbitration under the LCIA rules, the London Court of International Arbitration. The rules that were in effect at the time were the 1998 rules. It provided for arbitration in London by three arbitrators in accordance with those rules. Now, when one looks at the LCIA rules, and this is really, this goes to the heart of the question, and those rules are in the record beginning on page, in the appendix on page 1292. These rules specify the requirements for each and every arbitrator who is to be appointed in the case. These rules provide for the disclosure obligations of those arbitrators. These rules provide for the challenge procedure in case one party challenges the independence and impartiality of an arbitrator. And it's these rules that were invoked by the government of Belize when it finally reappeared in this arbitration. Bear in mind, it did not appear for the first few years. It came back after a partial award was rendered in its favor by a panel consisting of the very arbitrator whom they're challenging today. And they invoked the specific procedures under the LCIA rules. Now, under those rules, which are incorporated in the party's arbitration clause, it's part of their agreement. They provide that when there's a challenge, the LCIA shall constitute what is called a division, which is a panel, essentially, of either three to five members of the board of the LCIA. It consists of recognized international arbitrators. That panel will essentially hear the challenge de novo, make findings of fact, reach conclusions as to whether or not it finds there is a substantiation of the claim of lack of independence and impartiality. And that's exactly what was done here. And I think if one asks the question, what's probably the most important document in the record here, I suggest to the court that it is the decision on challenges in the appendix 0188. It is a reasoned decision by three experienced international arbitrators written by an American, probably the most experienced American arbitrator in the world today. It goes through every single issue raised by the government of Belize. It makes findings of fact. It applies those facts to the standards that are specified in the LCIA rules. And it concludes that there is no basis for the challenge and denies it. And we believe that these findings, both as to fact and conclusions as to the interpretation of the rules, are entitled to deference as the district court accorded them, because this process was agreed to by the parties when they put the LCIA rules in their arbitration clause. And so, therefore, this detailed opinion, and really there's no other way to describe it as an opinion, really sets out all the reasons why the challenge is misplaced and defective, not the least of which is that it's based on public information that was stale at the time the challenge was made. And beyond that, one of the most important and interesting facts in the record is that the government of Belize, before it made the challenge, made the proposal to the LCIA that Professor Douglas be appointed the chair of the tribunal. Think about it. Literally 10 days before they lodged the objection to his serving, they make the offer to the LCIA that if you, LCIA, allow us to appoint our own arbitrator now, years after we waive the right to do so, we will consent to Professor Douglas being made the chair of the tribunal. And that statement is in the record. It is at page, appendix 543, and also, again, at appendix 1173 to 1175. And, of course, the government... That was after the prior chair resigned because he had done work for... Exactly. He disclosed that he had been retained by counsel for the Belize Bank, and then he resigned. And it's exactly after this was done. So the government has tried to have it every which way. When it's convenient, they're willing to move Professor Douglas to become the chair of the tribunal. When that's not accepted, they suddenly want to challenge him to try to essentially reinstitute a new tribunal contrary to the LCIA rules. So with respect to the 501D challenge, we believe it's governed by the agreement of the parties. That agreement's the LCIA rules, and there's absolutely no basis on which that defense stands. Can I ask you, without regard to the merits or even the interpretation of the Hrvatska opinion, can you give me an idea of what the authority is of the International Center for Settlement Investment Disputes, what kind of precedential impact it has on these kind of arbitrations? Your Honor, first, this was an investment treaty arbitration under the ICSID convention, which involves public international law. So it has treaty status. It's very different from a commercial arbitration like this one. The ICSID case of Hrvatska was not governed by the New York Convention at all. It's totally within the ICSID framework. That decision, frankly, has been used by parties on one side or another, if and when they get it. I don't know what it actually supports. I'm actually just interested in what is its authority over arbitration to create rules or to precedent anyway with respect to the New York Convention, since that's what we have. Your Honor, I think, frankly, none. I think it is. It's either as persuasive as it's persuasive. Exactly. And there is, as we cited in our brief, ICSID decisions post-Hrvatska, which basically have tried to limit it to its facts because another panel disagreed with the conclusion that you can, in fact, exclude counsel from an arbitration. And so I think it really has – it has – it's at best persuasive in similar circumstances, but it has no authority in commercial arbitration at all, nor do I think it represents necessarily a wave of belief with respect to how one treats barristers. Sorry. Leaving that question, again, aside, on the question of whether it's international law or the law of the forum state, in a circumstance where the agreement provides, in this case, that the London Rule applies, is there any case that says international law applies? That's the argument of the other side. Yes. I should have asked, and I will ask on rebuttal, whether there's any kind of authority other than, I suppose, law reviews. Other than that, is there authority for the proposition that an international rule rather than the forum rule applies? Your Honor, I know of none. And, in fact, because the New York Convention is written, as you indicated before, in terms of either the agreement of the parties or, in the absence thereof, the law of the place of arbitration, there are really, I think, only two possible choices. One would be the agreement, which I believe governs here because the LCI rules are incorporated in the arbitration agreement. And if there were no such rules incorporated, then the law that would govern would be the law at the place of arbitration, which is English arbitration law. And it is identical, not surprisingly, to the LCI rules. Now, is there a complication in the division said it was going to follow? I can't pronounce the name, but the Hrvostka case? No, I don't think so. I think what the division did was take every single argument that was made, factual and contractual and legal, and address them. And it addressed the Hrvostka, and I think addressed it properly. And what's really, what's quite interesting is, again, if you look at the very end of the decision of the division, it's paragraph 55, it's on page 206 of the appendix, the division finds the following to be the relevant circumstances in this case. It makes factual findings based on the facts of this case, bearing in mind all the arguments in Hrvostka, and it concludes that on the facts of this case, there is no basis for disqualification of Professor Douglas. I interrupted, Judge Wilkins. So, what if one of the barristers in the matrix chambers during the arbitration was advising the Belize Bank on this very contract in arbitration, while another barrister from that same tribunal was presiding as an arbitrator? What if those were the facts? Should that trouble us at all? Well, first, obviously they're not the facts, but if they were the facts, under the rules, and there's a code of ethics, we cited it, that barristers are obligated to live by and conduct themselves by, they must maintain the confidentiality of their own files and their own clients and their own work. There is no sharing of work, because that would destroy confidentiality. There's no sharing of fees and expenses with respect to work. So, there's a complete division between barristers within the chambers. It's quite likely, in that circumstance, that someone sitting on the tribunal would not know, would have no way of knowing that someone else in that chambers may have been contacted by the Belize Bank. But what I would say is, if, obviously, counsel for the Belize Bank in the arbitration could and should probably know that that's going on, I don't believe the barristers would have any way of knowing, because the way their system is designed, it's meant to insulate each one from the other so they can be, at times, on opposite sides before the same tribunal, or be on a tribunal and be across the table and act for counsel. So, there might well be an obligation on counsel conducting the arbitration to alert the tribunal to that, but the barristers themselves would probably not know. And so, I don't believe there would be an issue. I don't think that would present an issue. If I could go, if I... I'll give you five sentences. Okay. I'll give you five sentences. I don't want to give you a time, because that could last. With respect to the public policy defense, as this Court knows, oftentimes invoked, rarely, rarely, rarely is it ever applied. I know of only one case in the Second Circuit where it's been applied. Every other time it's been rejected. Number two, the public, the U.S. public policy, what's fundamental to our society, is probably a fair and impartial tribunal. It is not U.S. ethics. U.S. ethics are not a law of the United States. They are not fundamental to our morality, but a fair and impartial tribunal is. What the district court found, based on reviewing the decision and the findings of the LCI board, was that the facts in this case do not come close to making out what is required to establish evident partiality under Section 10 of the FAA and, therefore, U.S. public policy. As the Court mentioned in the case, in the D.C. Circuit case. That's all right. We already know that case. Okay. Fine. Any further questions? Very good. If there's nothing else, thank you very much, Your Honor. Thank you. So, again, her first question. If you can answer the first question, the other question I asked, which is, is there a case that says that, under these circumstances, international rules, rather than the rules of the forum or the rules agreed to in the agreement, which were the London rules, would apply? Yes. I point you to that decision of the LCIA division. That's exactly what they do. They apply Hrvosta, and that's in paragraph 48 of that decision. They apply Hrvosta, and then they hold that, here, Hrvosta does not require striking him because there's no evidence that any barrister from Matrix Chambers, other than Douglas, has acted in this proceeding. So they misapply it. That's not what our argument was. Our argument is, your fellow barristers are representing Belize Bank. That's the conflict. But they apply it. So that's right there evidence that the LCIA acknowledges that that's the governing standard. Also, even if you look at the LCIA rules and look at their decision, again, the division decision, paragraph 42, article 5.3 of the rule says that if there are justifiable doubts as to impartiality or independence, an arbitrator has to step down. We presented that evidence. So the issue here is that the district court just rubber-stamped it, didn't do its own analysis. Now, quickly, on V2B, the public policy defense, everything my colleague has just told you is totally irrelevant. Why? Because the LCIA did not apply U.S. public policy. The district court cannot say, I rubber-stamped the LCIA on the public policy defense because the U.S. district court had to apply U.S. public policy. The LCIA did not apply it. And that's why this has to be reversed and be sent back for reconsideration. And just in closing, I would submit that there's nothing more fundamental to morality and to justice than ethics rules. And that's why the public policy defense exists. Thank you. Thank you. We'll take the matter under submission. We'll take a brief recess while the next set of lawyers moves on.
judges: Garland, Henderson, Wilkins